UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
DONALD MACK BENNETT,           :
               Plaintiff,           :
                          :       **OPINION AND ORDER**
v.           :
                          :       17 CV 4028 (VB)
KARL VOLMER, DR. RAUL ULLOA,           :
LIAISON PAT MORRIS, DR. EDITH ONUA,           :
and DR. JOON PARKS,           :
             Defendants.           :
----------------------------------------------------------------x

Briccetti, J.:

Plaintiff Donald Mack Bennett, proceeding pro se and in forma pauperis, brings this action under 42 U.S.C. § 1983, and New York state law, alleging defendants provided him inadequate medical care during his incarceration at Westchester County Jail ("WCJ").

Plaintiff's claims against defendants Warden Karl Vollmer[1] and Pat Morris were dismissed on January 26, 2018. (Doc. #43).

Now pending is the motion of defendants Dr. Raul Ulloa, Dr. Edith Onua, and Dr. Joon Parks to dismiss the second amended complaint ("SAC") pursuant to Rule 12(b)(6). (Doc. #27).

For the reasons set forth below, the motion is GRANTED.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

---

[1] Defendant Vollmer is incorrectly sued herein as Karl "Volmer."

1

**BACKGROUND**

For the purpose of deciding the pending motion, the Court accepts as true all well-pleaded factual allegations in the SAC and draws all reasonable inferences in plaintiff's favor, as summarized below.[2]

At all times relevant to the SAC, plaintiff was an inmate at WCJ.

Plaintiff alleges he has several injuries: "posterior horn cruciate lateral fibular collateral ligament meniscus mcl cyst tear" (plaintiff's "knee injury"), "lower bulging disc spinios buttock nerve damage" (plaintiff's "buttock injury"), "effection of gate," and "bleeding from a deadly drug called paraxda." (SAC at 6).[3] Plaintiff claims his injuries cause excruciating pain, and medical staff at WCJ failed to provide him adequate medical care during two separate periods of incarceration, May 10 to November 21, 2106, and May 11 to October 22, 2017.[4]

Specifically, plaintiff alleges Dr. Ulloa cannot "take care of over 1000 or more inmate[s]." (SAC at 4). In addition, plaintiff claims Dr. Ulloa failed to refer plaintiff to an orthopedic specialist. Plaintiff alleges Dr. Ulloa stated he would "give [plaintiff] what [he] want[ed]," if plaintiff dismissed his claims against Dr. Ulloa. (SAC at 5). Plaintiff further alleges Dr. Ulloa requires medical staff at WCJ to confer with him before making treatment

---

[2]  In addition to the SAC, the Court has reviewed and considered plaintiff's complaint (Doc. #2), amended complaint (Doc. #5), reply affirmation (Doc. #35), and "Reply Affirmation to Objection to Second Amended Claim from Defendant(s)." (Doc. #40). The Court notes that plaintiff's submissions, which consist of scattershot allegations against each defendant, are not a model of clarity. The Court has nevertheless attempted to summarize them coherently.

[3]  The Court assumes the drug plaintiff refers to as "paraxda" is in fact "pradaxa," and will identify it as such throughout this Opinion. (Compare SAC at 6, with Am Compl. Ex. 1 at 9).

[4]  It appears as if plaintiff was released from WCJ, and then returned to WCJ after he violated parole terms. (Compare SAC at 2, with Am. Compl. at 2).

decisions, and this policy causes "serious physical dangerous injuries" to inmates. (Am. Compl. at 4).

Plaintiff alleges Dr. Parks, his chronic care doctor, reduced his medical appointments from one appointment every four to six weeks to one appointment every eight weeks. In addition, plaintiff states he told Dr. Parks that his medication, pradaxa, caused rectal bleeding. Despite plaintiff's assertion that treatment with pradaxa should be discontinued if it causes bleeding, either Dr. Ulloa or Dr. Parks continued to prescribe pradaxa. Further, plaintiff asked to see an orthopedist and to discontinue pradaxa on five separate occasions, but each time Dr. Parks said he must confer with Dr. Ulloa regarding treatment decisions.

Plaintiff alleges Dr. Onua lied to a "county worker" regarding the date plaintiff incurred his knee injury. (SAC at 5). According to plaintiff, he injured his knee on November 16, 2015, but Dr. Onua stated plaintiff injured his knee in 1980.

Plaintiff claims that since May 10, 2016, he has never been given "any type of examin[ation]." (Am. Compl. at 5). However, this allegation is contradicted by plaintiff's allegation that he saw Dr. Parks once every four to eight weeks, and by medical records attached as exhibits to plaintiff's amended complaint, which reflect that plaintiff saw numerous medical providers between May 10, 2016, and May 30, 2017, when he commenced this action.[5]

---

[5] Among other things, plaintiff's medical records reflect the following treatment: a right knee MRI at Montefiore Mount Vernon Hospital on September 13, 2016 (Am. Compl. Ex. 1 at 1); orthopedic visits on July 26 and September 26, 2016 (id. at 3); right knee x-rays on June 23, 2016 (id. at 5); podiatry appointments on August 5 and October 21, 2016 (id. at 6); Westchester Medical Center clinical visits in June 2016 and on October 17, 2016 (id. at 9); and a preoperative evaluation for a colonoscopy and right knee arthroscopy on November 21, 2016. (Id. at 10). In addition, plaintiff was provided a knee brace, and used a cane. (Doc. #40 at 1).

3

**DISCUSSION**

I.     Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Id. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). The court may nevertheless consider a document not incorporated by reference if the complaint "'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)). However, "it must be clear on the record that no dispute exists regarding the authenticity or

accuracy of the document." DiFolco v. MSNBC Cable L.L.C., 622 F.3d at 111 (quoting Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006)). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." DiFolco v. MSNBC Cable L.L.C., 622 F.3d at 111 (quoting Faulkner v. Beer, 463 F.3d at 134).

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation and citation omitted). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted). Nor may the Court "invent factual allegations" plaintiff has not pleaded. Id.

II.     Plaintiff's Deliberate Indifference Claim

Defendants argue plaintiff fails to state a constitutional claim with regard to the medical treatment he received at WCJ.

The Court agrees.

   A.      Legal Standard

Deliberate indifference claims brought by pretrial detainees[6] are analyzed under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment, because

---

[6] It is not clear whether plaintiff was a pretrial detainee or a post-conviction detainee during his incarceration at WCJ. (Compare SAC at 2, with Am. Compl. at 2). The Court would expect defense counsel, who practices frequently before this Court, to assist the Court by stating clearly what plaintiff's detention status was, but counsel failed to do so. However, because defendants recite the Fourteenth Amendment standard applicable to deliberate indifference

5

"[p]retrial detainees have not been convicted of a crime and thus 'may not be punished in any manner—neither cruelly and unusually nor otherwise.'" Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017) (quoting Iqbal v. Hasty, 490 F.3d 143, 168 (2d Cir. 2007)).

To state a claim for deliberate indifference, plaintiff's allegations must satisfy a two-prong test. First, plaintiff must plausibly allege "the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process." Darnell v. Pineiro, 849 F.3d at 29. Second, plaintiff must satisfy a "mens rea prong" by plausibly alleging the defendants acted with "at least deliberate indifference to the challenged conditions." Id.

To satisfy the first prong, a pretrial detainee must allege an objective deprivation, by showing "'that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health.'" Darnell v. Pineiro, 849 F.3d at 30 (quoting Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013)). "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'" Id. (quoting Blissett v. Coughlin, 66 F.3d 531, 537 (2d Cir. 1995)).

When analyzing claims brought by pretrial detainees, the second prong "of a deliberate indifference claim is defined objectively." Darnell v. Pineiro, 849 F.3d at 35 (emphasis added). To satisfy the second prong, a "pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk . . . even though the defendant-official knew, or should have known," of the risk

---

claims brought by pretrial detainees, the Court assumes for purposes of this motion that plaintiff was a pretrial detainee during the relevant time periods. In any event, because plaintiff's allegations are insufficient to state a claim under the more lenient Fourteenth Amendment standard, they also would be insufficient to state a claim under the Eighth Amendment standard applicable to post-conviction detainees.

of harm. Id. Thus, unlike the Eighth Amendment, the Due Process Clause of the Fourteenth Amendment "can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm." Id.

The first prong of the Fourteenth Amendment analysis has two subparts. "The first inquiry is whether the prisoner was actually deprived of adequate medical care," keeping in mind that only "reasonable care" is required. Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 844–47 (1970)). "Second, the objective test asks whether the inadequacy in medical care is sufficiently serious" by examining "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Salahuddin v. Goord, 467 F.3d at 280 (citing Helling v. McKinney, 509 U.S. 25, 32–33 (1993)).

B. Application

With respect to the treatment provided by Dr. Ulloa and Dr. Parks, plaintiff does not allege he was actually deprived of adequate medical care.

To the contrary, plaintiff's allegations and the documents submitted with plaintiff's first amended complaint reflect that plaintiff regularly received treatment from Dr. Parks, as well as other medical treatment providers and specialists.

It is clear plaintiff would have preferred a different course of treatment for his knee injury, and medication other than pradaxa. However, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to" a constitutional violation. Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

Here, plaintiff does not allege how the treatment he received was inadequate, or allege that it caused his medical condition to deteriorate. Plaintiff's subjective belief that he should have received more or different medical treatment for his injuries is not a sufficient basis for a deliberate indifference claim.

To the extent plaintiff's claim is that Dr. Ulloa or Dr. Parks unconstitutionally delayed arthroscopic surgery for his knee injury, "[t]he Second Circuit has generally found constitutional violations with respect to delays in providing medical care only when the 'officials deliberately delayed care as a form of punishment, ignored a life-threatening and fast-degenerating condition for three days, or delayed major surgery for over two years.'" Valdiviezo v. City of N.Y., 2017 WL 1191528, at *4 (S.D.N.Y. Mar. 29, 2017) (quoting Demata v. N.Y. State Corr. Dep't of Health Servs., 198 F.3d 233 (2d Cir. 1999) (internal quotation omitted)).[7]

Here, plaintiff's surgery allegedly was delayed over the course of two six-month periods of incarceration, and medical professionals apparently characterized his knee injury as "not an emergent issue." (SAC at 9).[8] Thus, the alleged delay in providing plaintiff surgery for his knee injury does not rise to the level of a constitutional violation.

---

[7] Because plaintiff is proceeding pro se, he will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

[8] Plaintiff's allegation that Dr. Ulloa offered to "give [plaintiff] what [he] want[ed]," if plaintiff dismissed his claims against Dr. Ulloa could be construed as a claim that Dr. Ulloa delayed plaintiff's medical treatment as a form of punishment. (SAC at 5). However, it is self-evident that such a statement would have been made after plaintiff initiated this action, and thus it cannot form the basis of a claim that Dr. Ulloa unconstitutionally delayed plaintiff's treatment. Moreover, because plaintiff alleges he was not given "any type of examin[ation]" after May 10, 2016, it is not clear when such a conversation would have taken place. (Am. Compl. at 5; Cf. Tavares v. N.Y.C. Health & Hosps. Corp., 2015 WL 158863, at *3 (S.D.N.Y. Jan. 13, 2015) ("While a court deciding a motion to dismiss must generally accept the complaint's factual allegations as true, it is permitted to reject the truthfulness of those allegations when they are contradicted by matters of which judicial notice may be taken.")).

Finally, with respect to Dr. Onua, plaintiff does not allege her misstatement regarding the date he incurred his knee injury caused any damage or further injury.

Accordingly, plaintiff's Fourteenth Amendment deliberate indifference claim is dismissed.

II.     State Law Claims

A liberal reading of the complaint suggests plaintiff also intends to assert state law claims for negligence and medical malpractice.

Having dismissed the only federal claim in this case, the Court does not have original jurisdiction over plaintiff's state law claims.

"A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009); 28 U.S.C. § 1367(c)(3).

The Court declines to exercise supplemental jurisdiction over plaintiff's state law claims.

III.    Leave to Amend

The Court should freely grant leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a). Moreover, when a pro se plaintiff fails to state a cause of action, the Court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks and citation omitted).

Here, plaintiff has been given ample opportunity to defend his complaint or show he has a valid claim. By Order dated July 14, 2017, the Court directed plaintiff to submit an amended complaint for the purpose of showing his complaint qualified for the "imminent danger" exception of 28 U.S.C. § 1915(g). (Doc. #4). Plaintiff complied, and submitted an amended

complaint on August 14, 2017. (Doc. #5). Then, on November 1, 2017, plaintiff sought leave to submit a second amended complaint "with more sufficient grounds of law." (Doc. #14). The Court granted plaintiff's application, and he submitted the SAC on December 5, 2017. (Doc. #17).

Moreover, having read the SAC and plaintiff's other submissions liberally, the Court does not find any allegations that suggest plaintiff has a valid claim he has merely "inadequately or inartfully pleaded" and therefore should be "given a chance to reframe." Cuoco v. Moritsugu, 222 F.3d at 112. On the contrary, the Court finds that repleading would be futile, because the problems with the SAC are substantive, and supplementary and/or improved pleading will not cure its deficiencies. See id.

Accordingly, the Court declines to grant plaintiff further leave to amend.

## CONCLUSION

The motion to dismiss is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #27) and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: August 7, 2018
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge